**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-6760**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CHARLES ROBERT LUESSENHOP,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Senior District Judge. (1:02-cr-00298-JCC; 1:03-cv-00458-JCC)

Argued: September 27, 2007          Decided: December 19, 2007

Before TRAXLER and KING, Circuit Judges, and Benson E. LEGG, Chief United States District Judge for the District of Maryland, sitting by designation.

Affirmed by unpublished opinion. Judge Legg wrote the opinion, in which Judge Traxler and Judge King joined.

**ARGUED:** James Warren Hundley, BRIGLIA & HUNDLEY, P.C., Vienna, Virginia, for Appellant. Thomas Higgins McQuillan, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

LEGG, Chief District Judge:

Charles Robert Luessenhop appeals from the district court's order dismissing his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (2000). We granted a certificate of appealability to determine whether Luessenhop received ineffective assistance of counsel at his sentencing. To resolve this question, we must also decide when the "actual loss" rule should be relaxed in calculating a defendant's restitution obligation under the United States Sentencing Guidelines.

We conclude that a defendant in a fraudulent loan application case may avoid the actual loss rule only by establishing fraud on the part of the Government. Finding such fraud absent from the record before us, we hold that the failure of Luessenhop's attorney to invoke the so-called "McCoy" exception when objecting to the district court's loss calculation did not amount to ineffective assistance of counsel. Accordingly, we affirm the district court's order dismissing Luessenhop's motion under § 2255.

I.

A.

In May 2002, Luessenhop pled guilty to a single count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (2000). The plea agreement stipulated that Luessenhop made false statements to the Department of Housing and Urban Development

2

(HUD) for the purpose of obtaining HUD-insured mortgages on two properties[1] for buyers who were unable to make the required down payments. Both buyers defaulted on their mortgages soon after purchasing the properties.

In accordance with the governing regulations and guidelines, HUD paid the balance of the mortgages and assumed ownership of the properties. Such properties are referred to as Real Estate Owned ("REO") properties, and are ultimately resold pursuant to Marketing and Management contracts ("M & M contracts") between HUD's REO division and private real estate companies ("M & M contractors").

Before a REO property is resold, an M & M contractor is required to obtain an appraisal of the property from a HUD-approved appraiser. The property is then advertised for sale and a bidding process ensues. In most cases, the highest bid meeting or exceeding the appraisal price is awarded a sales contract. J.A. 96. In selecting among potential bidders, HUD gives preference to those who certify that they are purchasing the property as owner-occupiers.

After assuming ownership of the K Street and G Street properties, HUD entered into M & M contracts with First Preston Management Co. and In-Town Management Group. First Preston obtained an appraisal of the K Street property, listed it for resale, and

---

[1]The properties are located at 1509 G Street, S.E., Washington, DC (the "G Street property") and 815 K Street, N.E., Washington, DC (the "K Street property").

3

awarded a sales contract to Claude Jackson. The property was subsequently conveyed to Jackson for a price of $60,500. Intown conducted a similar process with respect to the G Street property, which was eventually resold to Theodore Powell for $109,000.

The appraisals of both properties were signed by Winfield Willis, a HUD-approved appraiser licensed to perform appraisals in Washington, DC. Willis later testified, however, that the appraisals were actually performed by Keith Patterson, a business partner of Willis's who was not licensed to perform appraisals in Washington, DC at the time.[2] J.A. 124-25. Although Willis never visited the properties, he authorized Patterson to sign his name on both appraisals. Neither Willis nor Patterson informed HUD that Willis did not actually perform the appraisals. Id. at 127, 132.

Unaware that the K Street property had sold two years earlier for $165,000, Patterson appraised its value at $63,000. In support of his valuation, Patterson observed that there was water damage in the basement and that the kitchen in one of the building's units needed rehabilitation. He therefore determined that the property was in "fair" condition. The district court credited Patterson's testimony that he "did not accept money from anyone to artificially deflate the value of the property." J.A. 378.

---

[2]Patterson was, however, licensed to perform appraisals in Maryland. J.A. 171.

4

Two months after the K Street property was conveyed to Claude Jackson for $60,500, Jackson resold it for $179,950. As the district court put it, this transaction was "teeming with circumstantial evidence indicative of fraud." J.A. 388. Jackson had previously certified, in an addendum to his sales contract with HUD, that he intended to occupy the K Street property as his primary residence for at least one year. He breached this commitment by promptly reselling the property.

Furthermore, although Jackson resold the property for almost three times its purchase price, he testified that he did not recall the resale price, that he received no money from the transaction, and that he could not remember how the resale proceeds were disbursed. J.A. 140-45. Similarly, the attorney who handled the closing on Jackson's behalf - an individual named Michael Perry - testified that he could not remember the transaction. Id. at 162-65. The testimony of both individuals was contradicted by documentary evidence indicating that Jackson received approximately $10,000 in connection with the sale, and that Perry and his settlement company received just shy of $130,000. J.A. 16-17.

B.

In August 2002, pursuant to Section 2F1.1 of the United States Sentencing Guidelines (2001),[3] Luessenhop was sentenced to four

---

[3]Effective November 1, 2001, Section 2F1.1 of the Guidelines was consolidated with Section 2B1.1. For purposes of this opinion, however, all Guidelines citations are to the 2001 version unless

months' imprisonment, four months' home detention, and two years of supervised release. He was also ordered to pay restitution in the amount of $223,816.77.

In calculating Luessenhop's restitution obligation, the district court relied on Application Note 8(b) to Section 2F1.1 of the Guidelines. The note provides, in relevant part: "In fraudulent loan application cases, the loss is the amount of the loan not repaid . . . reduced by the amount the lending institution has recovered, or can expect to recover, from any assets pledged to secure the loan." In accordance with this provision, the district court calculated HUD's loss by ascertaining the amount paid to satisfy the mortgages on the K Street and G Street properties, subtracting the amount recovered in the REO resales to Claude Jackson and Theodore Powell, and adding the fees and expenses incurred in the process. This computation yielded a total loss of $223,816.77.

Luessenhop's attorney objected to the district court's loss calculation on the grounds that HUD's actual loss was not reasonably foreseeable to Luessenhop at the time of the offense. J.A. 54. Claiming that Luessenhop could not have anticipated that HUD would resell the properties at prices substantially below market value, counsel at sentencing argued that Luessenhop was entitled to have his restitution obligation reduced. Id.

otherwise noted.

The district court rejected this argument under United States v. McCoy, 242 F.3d 399, 404 (D.C. Cir. 2001) a D.C. Circuit decision holding that the loss calculation in fraudulent loan application cases should be based on the actual sale price of the collateral, "not any greater amount that the lender should have been able to recover." J.A. 58. The McCoy opinion suggests, however, that this "actual loss" rule does not apply when the sale of collateral is a sham or not an arms-length transaction, or when the Government artificially depresses the value of its recovery. 242 F.3d at 404.

Although familiar with the McCoy decision, Luessenhop's attorney did not invoke this exception in support of his objection to the district court's loss calculation. Asked how he would distinguish McCoy, counsel responded that he could not, other than to say it was a non-binding decision from the D.C. Circuit. J.A. 55. Counsel also declined to argue that the REO sales of the properties were fraudulent. Id.

After Luessenhop's objection to the district court's loss calculation was overruled, the Government moved for a two-level downward departure pursuant to Section 5K1.1 of the Guidelines, in light of Luessenhop's substantial assistance in the investigation of a codefendant. The district court granted the motion and sentenced Luessenhop at the low end of the guideline range. J.A. 64-65.

C.

In April 2003, Luessenhop filed the present motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The motion alleged that the Government had failed to produce exculpatory evidence and that Luessenhop had received ineffective assistance of counsel.

In support of his ineffective assistance claim, Luessenhop faulted his attorney for failing to invoke the McCoy exception when objecting to the district court's loss calculation. According to Luessenhop, the appraisals of the properties were infected with fraud, causing an artificially depressed recovery in the subsequent REO sales to Claude Jackson and Thedore Powell. Had his attorney discovered the fraudulent appraisals and brought them to the district court's attention, Luessenhop argued that his restitution obligation would have been substantially reduced.

The district court denied Luessenhop's motion without a hearing in July 2004. Luessenhop appealed. In an unpublished opinion filed on July 29, 2005, this Court remanded for an evidentiary hearing as to whether Luessenhop received ineffective assistance of counsel at his sentencing. United States v. Luessenhop, 143 Fed. Appx. 528, 2005 WL 1793575, No. 04-7328 (4th Cir. 2001), J.A. 82-87 (Hereinafter Luessenhop I).[4] According to

---

[4]The certificate of appealability in Luessenhop I was limited to the claim that Luessenhop received ineffective assistance of counsel. The panel did not address Luessenhop's argument that the

8

the panel, the hearing was to focus on whether the appraisals of the properties were fraudulent. Id. at 5, J.A. 86.

In advance of the evidentiary hearing, the district court filed a memorandum specifying Luessenhop's burden of proof. Id. at 88-94. In order to prevail on his ineffective assistance claim, Luessenhop was required to establish: "[I] that "the appraisals were not at arms length, were the result of fraud or misconduct, or were otherwise a sham; and [ii] that HUD knew of the fraudulent nature of the appraisals." Id. at 92.

The evidentiary hearing took place on February 27, 2006. Luessenhop called seven witnesses, including Willis and Patterson (the individuals who signed and performed the appraisals, respectively); Colleen Morrison, an expert real estate appraiser; and James C. Clark, the attorney who represented Luessenhop at sentencing.[5]

At the close of Luessenhop's case-in-chief, the Government moved to dismiss. The district court granted the motion, finding that Luessenhop had failed to establish that the appraisals were fraudulent as to their valuations or that HUD was complicit in

---

Government failed to produce exculpatory evidence. J.A. 83.

[5]Luessenhop also called Claude Jackson (the individual who purchased and "flipped" the K Street property); Judith Blowe (a real estate broker who allegedly represented Jackson in connection with his purchase of the K Street property); and Michael Perry (the attorney who closed the subsequent sale of the K Street property on Jackson's behalf).

fraud or misconduct. "Absent such evidence," the Court explained, "there would be no reason for [Luessenhop's attorney at sentencing] to press an argument based on the [McCoy] exception." Id. at 388. Accordingly, the Court held that Luessenhop did not receI've ineffective assistance at his sentencing and dismissed the case. Luessenhop then filed this appeal.

## II.

In considering the district court's dismissal of Luessenhop's § 2255 motion, we review its conclusions of law *de novo* and its findings of fact for clear error. United States v. Roane, 378 F.3d 382 (4th Cir. 2004). We decide *de novo* whether specific facts constitute ineffective assistance of counsel. See United States v. Witherspoon, 231 F.3d 923, 936 (4th Cir. 2000).

## III.

## A.

Luessenhop argues that the district court misinterpreted the McCoy exception by requiring him to establish fraud on the part of the Government. Appellant's Br., 18, 20-22. According to Luessenhop, all that is required to invoke the exception is a showing that "the resale of the propert[ies] was *done in a manner to [] artificially depress [HUD's] recovery.* Id. at 18 (emphasis original)(quoting McCoy, 242 F.3d at 404)(internal quotation omitted). Pointing to irregularities in the appraisals and

10

circumstantial evidence of fraud in the subsequent resale of the K Street property, Luessenhop argues that he has met his burden under McCoy and is therefore entitled to have his restitution obligation reduced.

The district court did not read McCoy so broadly, and neither do we. We hold that the McCoy exception to the actual loss rule requires a defendant to show 1) that the sale of collateral by a Government agency was the product of fraud, not at arms length, or otherwise a sham; *and* 2) that the fraud or misconduct was attributable to the Government agency. The district court correctly applied this standard in evaluating Luessenhop's claim for relief.

We agree with the district court that the language of McCoy "contemplates some sort of complicity on the part of the Government agency" before a departure from the actual loss rule is appropriate. J.A. 383. In holding that the loss calculation from a fraudulent Small Business Administration (SBA) loan application should be based on the actual sale price of the collateral pledged to secure the loan, the McCoy panel emphasized the lack of evidence suggesting "that the liquidation sale was a sham, or that *the SBA* artificially depressed the value of its recovery." 242 F.3d at 404 (emphasis supplied). This language clearly suggests that a below-

11

market recovery should be attributable to Government fraud or misconduct before an exception to the actual loss rule is made.[6]

In contrast, Luessenhop argues that the actual loss rule ceases to apply when the sale of collateral is "*done in a manner to artificially depress recovery*," whether or not the depressed recovery is attributable to fraudulent Government activity. J.A. 22 (emphasis original).[7] As the district court correctly determined in dismissing Luessenhop's claim, this interpretation demands more than the language of McCoy will bear.

Our reading of McCoy is founded on practical concerns as well. Allowing defendants in cases such as this to avoid the actual loss rule without showing fraud on the part of the Government would turn sentencings involving the loss table into mini-trials into the reasonableness of the Government's efforts to cure its loss. We discern nothing in the language or purpose of the Sentencing Guidelines to mandate such an inquiry, and we decline to impose one ourselves by accepting the expansive interpretation of McCoy that Luessenhop would have us adopt.

---

[6]A panel of this Court suggested as much in Luessenhop I, which interpreted McCoy as holding that "*absent fraud on the part of the Government*, the loss calculation should be based on the actual sale price of the collateral[.]" J.A. 84 (emphasis supplied).

[7]As Luessenhop would have it, "McCoy does not ... require proof of fraud on the part of the government agency before a reduction in the loss amount could be granted." J.A. 22.

In sum, the district court properly interpreted the McCoy exception in formulating Luessenhop's burden of proof. In order to avoid the actual loss rule, Luessenhop was required to establish (i) that appraisals of the properties were fraudulent as to their valuations, *and* (ii) that the fraud was somehow attributable to HUD.

B.

The district court correctly determined that Luessenhop had failed to meet his burden. In presenting his case during the evidentiary hearing, Luessenhop argued that certain "indicia of fraud" in the appraisal and resale of the properties justified a departure from the actual loss rule.[8] He presents essentially the same arguments in this appeal, emphasizing three claims in particular. Each was addressed and properly rejected by the district court.

First, Luessenhop argues that the appraisals of the properties "were forgeries, prepared by an unlicensed appraiser." Appellant's Reply Br. at 2. According to Luessenhop, the fact that the appraisals were signed by Willis, but performed by Patterson,

---

[8]At the hearing, Luessenhop's counsel argued that "what we do have is a sufficiently strong circumstantial case involving what could be called indicia or badges of fraud that would convince the court that, had you been aware of these occurrences and what happened in this resale[,] there's a reasonable likelihood that the Court would not have imposed the $223,000 loss figure." J.A. 109.

13

without HUD's consent, "strikes at the heart of the valuation issue in this case." Id. at 3.

As the district court observed, the "arrangement" between Willis and Patterson may well "constitute [a] violation[] of the pertinent HUD regulations and [] District of Columbia licensure requirements." J.A. 384. Luessenhop has not established, however, that the arrangement had any effect on Patterson's valuation of the properties. Furthermore, the district court found no evidence suggesting that HUD was aware that Willis did not perform the appraisals, id., and there is nothing in the record to convince us that this finding is clearly erroneous. We therefore conclude that Luessenhop has failed to show fraud on HUD's behalf, and that the arrangement between Patterson and Willis does not warrant a departure from the actual loss rule.

Second, Luessenhop contends that Patterson's appraisals "drastically undervalued" the properties. Appellant's Reply Br. at 3. In support of this argument, Luessenhop presented the testimony of Colleen Morrison, an expert in the field of real estate appraisals.[9] Although Morrison testified that she disagreed with

---

[9]Luessenhop argues that Morrison's testimony "was not the only evidence presented to show the dramatic undervaluation of the properties in question." Appellant's Reply Br. at 3. According to Luessenhop, the fact that Claude Jackson resold the K Street property for almost triple the price of Patterson's valuation "is sufficient for a reasonable finder of fact to conclude that [its] value had been artificially depressed[.]" Id. This argument fails, for two reasons. First, we have already concluded that the McCoy exception requires Luessenhop to establish fraud on HUD's behalf;

Patterson's valuations, she declined to conclude that the appraisals had been performed in a fraudulent manner. J.A. 228. Furthermore, the district court observed that Morrison never physically inspected either property and that her valuations were based on faulty assumptions. Id. at 228. The court therefore determined that Morrison was not a reliable witness, and it refused to conclude that Patterson's appraisals were fraudulent "based on a comparison with Morrison's appraisal." Id. We see no reason to disturb this finding.

Luessenhop's third argument is that the ultimate resale of the K Street property did not result from an arms-length transaction. Appellant's Reply Br. at 4. Although the district court rightly noted that the K Street resale was "teeming" with circumstantial evidence of fraud, J.A. 388, such evidence does not establish that Patterson or Willis acted fraudulently in appraising the property, let alone that HUD was aware of it. HUD's initial resale of the K Street property was separate and distinct from the transaction in which Claude Jackson subsequently "flipped" the property two months later, and Luessenhop has failed to establish that Patterson, Willis, or HUD were in any way complicit with Jackson and his

he cannot invoke the exception merely by arguing that Patterson's valuations were "artificially depressed." Second, as we explain *infra*, the circumstances surrounding Jackson's resale of the K Street property do not establish that Patterson's appraisals were fraudulent as to their valuations, much less that HUD was complicit in such a scheme.

15

confederates. Accordingly, we agree with the district court that the irregularities in the K Street transaction are insufficient to satisfy Luessenhop's burden under McCoy.

IV.

To prevail on his ineffective assistance of counsel claim, Luessenhop must establish (1) that his counsel's performance "fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also McNeil v. Polk, 476 F.3d 206, 215 (4th Cir. 2007). Failure to make either of these showings will defeat Luessenhop's claim. Strickland, 466 U.S. at 700.

In order to demonstrate that his counsel's performance was deficient, Luessenhop "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. In this case, Luessenhop argues that an objectively reasonable attorney would have investigated the "invalid" appraisals of the properties, brought them to the district court's attention, and argued for an adjusted loss calculation "through a proper application of the McCoy exception." Appellant's Br., 26.

16

As we have already explained, however, Luessenhop has failed to establish that he was entitled to invoke the McCoy exception in the first place. By way of review, there was no evidence before the district court that the appraisals were based on fraudulently depressed valuations or that HUD was complicit in fraud or misconduct. Without evidence of fraud on HUD's behalf, Luessenhop's attorney had no reason to pursue the McCoy exception when arguing for a departure from the actual loss rule.

Furthermore, counsel testified at the evidentiary hearing that he considered the possibility of attempting to prove fraud on HUD's behalf. J.A. 241. After discussing this strategy with Luessenhop, however, he opted instead to seek a downward departure under section 5K1.1 and to argue that HUD's actual loss was unforeseeable to Luessenhop at the time of the offense. Id. According to counsel, "the conclusion that we came to was that there was risk involved in exploring the fraud angle in that it might discourage the U.S. Attorney's office from giving us a [downward departure under Section 5K1.1]." Id. at 243.

We believe that Luessenhop's attorney made a tactical decision not to raise a losing argument at sentencing. Moreover, he was ultimately successful in obtaining a downward departure under Section 5K1.1. Applying the "highly deferential" standard announced by the Supreme Court in Strickland, we conclude that counsel's performance falls well within the boundaries of

17

acceptable trial strategy. Luessenhop has therefore failed to meet his burden under the first prong of the Strickland test.

Luessenhop is also unable to establish that he was prejudiced by his attorney's performance. On the record before us, there is no reasonable probability that the result of the proceedings would have been different had counsel unearthed the "invalid" appraisals and attempted to invoke the McCoy exception. To the contrary, counsel wisely determined that pursuing the "fraud angle" might have jeopardized the possibility that the Government would move for a downward departure under section 5K1.1. Accordingly, Luessenhop has failed to satisfy Strickland's second requirement, and his ineffective assistance claim must fail.

V.

For the foregoing reasons, we hold that the McCoy exception to the actual loss rule requires a defendant to show fraud on the part of the Government. In this case, the district court correctly determined that Luessenhop had failed to establish fraud on HUD's behalf. Accordingly, we conclude that Luessenhop's attorney was not ineffective for failing to invoke the McCoy exception during his sentencing. We therefore affirm the district court's order dismissing Luessenhop's motion under § 2255.

AFFIRMED

18